## Case No. 2,782.

### In re CLANCY.

[10 N. B. R. (1874) 215.][1]

District Court, E. D. Michigan.

BANKRUPTCY—CLAIM OF LANDLORD.

Where premises under a lease are taken and condemned to the use of a railroad company, and damages are paid by the company to the tenant, upon the basis that his obligation to pay rent during the remainder of the term will continue, which obligation he expressly recognizes when he receives the money, and which he partly performs; the landlord, on the bankruptcy of the tenant, will be allowed to prove, as a claim against the estate, the amount of the unpaid installments of rent, at their value at the date of the bankruptcy.

The register certified that Guy F. Hinchman, executor of the estate of James Abbott, tendered as proof of debt against said bankrupt's estate his deposition, setting forth that at and before the filing of the petition for the adjudication of said [John] Clancy as a bankrupt, he, said Clancy, was indebted to said Hinchman, as such executor, in the sum of two thousand six hundred and twenty dollars, for rent of land leased by Hinchman to Clancy by a lease in writing, a copy of which, together with other exhibits, were annexed to the proof, from which the following facts appeared: First. The term for which the premises were leased began on January 1, 1872, and would end January 1, 1877. Second. The rent has been paid in full to the 1st day of April, 1873, and the sum of seventy dollars on account of the rent which became due July 1, 1873, leaving unpaid of the rent which became due by the terms of the lease on that day, the sum of one hundred and five dollars. The instalments of rent which would become due October 1, 1873, and January 1, 1874, would be, each, one hundred and seventy-five dollars, and for each of the remaining years of the term 1874, 1875, and 1876, two hundred dollars would become due at the end of each quarter. The whole sum unpaid, due and to become due by the terms of the lease, being two thousand eight hundred and fifty-five dollars. The claimant rebates the interest on the sums not due, and claims two thousand six hundred and twenty dollars as the sum to which he is entitled, as computed at January 1, 1874. Third. On the 15th of March, 1873, the premises leased were, by an order of the circuit court for the county of Wayne, upon proceedings instituted by the Detroit, Lansing, and Lake Michigan Railroad Company, and in due form of law, as prescribed by the statutes of the state of Michigan, condemned for the use of said company, and under the statute provided in such cases, the damages or compensation which ought justly to be made by said company to the owners of or persons interested in the premises so condemned were adjudged by the court, on the verdict of the jury em-

paneled under the statute, to the owners of the fee or reversionary interest in the premises leased to the bankrupt, as well as to other persons, the sum of six thousand two hundred and twenty-five dollars, and to the said bankrupt by reason of the taking of his leasehold interest in said premises, the sum of nine thousand five hundred dollars, which last-mentioned sum was paid to said Clancy March 27, 1873. Fourth. The jury empaneled to inquire what damages or compensation ought to be allowed to parties interested, were instructed by the circuit judge "that, in estimating the value of the leasehold interest of said John Clancy, and in awarding him the value thereof, said jury were to take into consideration that said John Clancy would not be released from paying the rent * * * as it might become due, and that they should make their estimates and award upon the basis that out of the moneys so paid by said company to said Clancy, said Clancy was to pay said installments of rent as they should become due."

[By Hovey K. Clarke, Register:]

This claim is for rent, which section 19 of the bankrupt act [14 Stat. 525] provides may be proved "as if the same grew due from day to day," a provision which, so far as I know, has been uniformly construed to authorize the proving of claims for rent up to the date of the bankruptcy, and no longer. The section cited concludes with the words: "no debts other than those above specified shall be proved or allowed against the estate." There is no other provision concerning the proof of claims for rent than the one cited; and whether the bankrupt will remain liable on the lease for rent which subsequently becomes due, even though he should be discharged from other indebtedness or not, it seems to me unavoidable that no claim can be maintained against his estate in bankruptcy for rent accruing after December 12, 1873, the date when the proceedings in this case were commenced. It may become a question, however, whether, notwithstanding this claim is stated to be for rent, it may not be included in that class of provable claims described in the first paragraph of section 19 as a debt existing at the date of the bankruptcy, but not payable until a future day. This raises the question, what was the effect of the proceedings in the Wayne circuit court on behalf of the railroad company, by which the premises leased were taken under the authority of the state and appropriated to the use of the company. If the circuit judge correctly charged the jury that the tenant would not be released from his obligation to pay rent, and that the jury must take that fact into consideration, the effect of which would be to enhance the compensation to be allowed to the tenant, and to diminish that to be allowed to the landlord—then, so far as the agreement to pay rent is concerned, the relation of landlord and tenant is undisturbed,

---

[1] [Reprinted by permission.]

the landlord's right to collect his rent as it shall become due remains unaffected until the happening of the bankruptcy, when, by force of the bankrupt act, this right is so far changed that the rent is to be computed "as if the same grew due from day to day," instead of at the stated quarterly period fixed by the lease. The direction of the circuit judge to the jury simply confirms the lease as an existing contract on the part of the tenant to pay rent, and this contract is the basis of the proof offered here. There is nothing in the principle as stated by the circuit judge, which authorizes any claim here except upon the lease, and that in the same manner as though the tenancy had never been disturbed by the proceedings to take possession of the premises leased; nor is there anything in the bankrupt act which, in the exceptional condition of this particular case, will allow a landlord to prove a claim for over three years' rent yet to accrue—a right which is uniformly denied to all other landlords. If these views be correct, the amount to be allowed in this case cannot exceed the rent accrued and unpaid at December 12, 1873, the date of commencing proceedings, which I compute as four hundred and eighty-nine dollars and fifteen cents, out of which the seventy dollars paid must be deducted, leaving due, at that date, four hundred and nineteen dollars and fifteen cents.

There is, however, another question which is presented upon the facts set forth in the deposition offered in proof of this claim, and one of sufficient importance, as it seems to me, to entitle it to the consideration of the court. The rent had been paid in full to the 1st day of April, 1873. Prior to that date, the right of both landlord and tenant to the possession of the premises had been terminated by a proceeding in the state court, by which the state, in its exercise of the right of eminent domain, had authorized the railroad company to assume exclusive possession of the premises leased. By the lease on which this claim is founded, the landlord assured to the tenant the quiet enjoyment of the premises in language as explicit as that which bound the tenant to pay the rent. That eviction by a paramount title discharges a tenant from the obligation to pay rent, is undisputed. That this tenant has not been evicted, and that by a paramount title, it seems to me impossible to deny without violence to the substantial import of these terms. The character of this eviction and of its consequences to the parties affected by it, are properly the subject of inquiry, but that inquiry ought to lead to the application of such a rule as will be just to all parties. It is true that courts, in the application of well established, and, for the most part, wisely established principles, are sometimes obliged to sanction results which are not approved by their sense of justice. If any such principles control the facts of this case, of course they must be applied.

I understand it to be asserted by the claimant who offers this proof, that the words "eviction" and "paramount title" have a technical significance, which so restrains their natural and obvious import, that, while a landlord will be discharged from his obligation to protect his tenant in the enjoyment of the subject of the tenancy, when that enjoyment has been disturbed by the exercise of the right of eminent domain, yet such disturbance is not equally available as a defense by the tenant against the landlord in an action for the rent. It is true that the exercise of the right of eminent domain involves no impeachment of that title of the landlord on which he relied to assure his tenant the quiet enjoyment of the premises leased; and for that reason it is just that the landlord should not be liable for a breach of that covenant. The inability to make good that covenant results from the assertion of a title to which both landlord and tenant are equally subject; and in view of the possible assertion of which, the lease must be supposed to have been executed by both parties. The assertion of the right and power of the state puts an end, practically, to the rights of both landlord and tenant to the possession of the premises, and they are remitted for compensation for the invasion of their rights to the company for whose benefit their property has been seized. And, if compensation to the landlord is to be adjusted upon the theory that the tenant will still be liable for the payment of the rent, why should not the compensation of the tenant be adjusted upon the theory that the covenant for quiet enjoyment still remains in force? It is true that this method of remitting the parties to each other for their compensation would inure greatly to the advantage of the company, and therefore is not likely to be adopted; but this illustration of the principle ought to be conclusive against its application so as to transfer to one party compensation for damages which are really suffered by the other—which was actually done by the circuit court in this case. For, the actual damage to the claimant in this case was the value of the fee of the land, less the value of the lease, in excess of a sum for which the rent is a fair income. Ordinarily, the value of a lease is accurately indicated by the rent reserved. But, as was probable in this case, and will always be likely to be where the value of real estate is from year to year increasing, the value of a lease may be ascertained by the bonus which a party would pay for an assignment of it. If it was worth no bonus, then a release from the obligation to pay rent would be all the tenant could claim, and the whole compensation would go to the landlord. But, by the rule adopted in the circuit court, assuming that the obligation to pay rent remains, then the tenant must be entitled to such a sum from the company as will enable him to meet those payments. This sum in

gross being paid to the tenant, what security has the landlord that it will be applied to discharge the obligation which was the only ground of its allowance, and not a very reliable one, as the result in this case shows? While the lease remained, the landlord's right of re-entry afforded abundant security. Of this, by the rule contended for here, the landlord is arbitrarily deprived, by some technical views concerning eviction, which, if the law compels us to regard as sound, do not reflect much credit upon the law, as a system for securing justice to those who appeal to its tribunals.

It is surprising that the attempt to apply a rule so artificial as this, has not led all courts to see that on the assertion by the state of the right of eminent domain, over premises subject to a lease, that the nearest approach to justice to both parties can be made by treating the lease as at an end, and allow each party to look for compensation—irrespective of any possible contingencies as to future claims against each other—to the law, which provides for damages or compensation in such cases. I have been referred to the case of Dyer v. Wightman, 66 Pa. St. 425, as an authority for the rule contended for by the claimant in this case. Its force seems to me much greater against the rule, than in support of it. Dyer brought an action of debt against Wightman for two years' rent. The defense was that the premises had been appropriated by a railroad company. The defense offered evidence of the allowance of damages against the company to the party under whom the plaintiff claimed. The court admitted the evidence, and charged the jury that the title of both parties to the lease, as well as the owner of the fee, under whom Dyer claimed, and to whom the damages, the proof of the payment of which was offered, were paid, "was changed. Each could recover the value of his or her particular interest or estate in the land from the railroad company; but the relation of landlord and tenant between the parties was thereby extinguished, and their rights under such relationship ended." Page 426. The verdict was for the defendant, and the judgment was carried by writ of error to the supreme court. The court, in delivering the opinion (page 427), concede it to be "well settled that a taking by the sovereign under the right of eminent domain is not an eviction." Yet, notwithstanding this ceremonious act of homage to the traditions of the law, to the constraints of which courts feel so often compelled to submit, the court in Pennsylvania found reason to affirm the opinion of the court below, that the relation of landlord and tenant was extinguished, and their rights under such relationship ended (page 429), and the judgment was accordingly affirmed. The reasoning of the opinion fully supports the conclusion of the court, that by such a taking the relation of landlord and tenant was extinguished, and

that therefore the tenant was no longer bound to pay rent. "The dispossession of the tenant, by an authority which neither he nor his landlord could resist, would strike most men as an adequate reason why he should no longer be obliged to pay rent; and a reason none the less conclusive because of the doubts expressed by learned judges, whether such dispossession was or was not a technical eviction."

It is insisted before me, as I understand, by the counsel who appeared for the claimant, that the court in Pennsylvania was able to reach the result in the case of Dyer v. Wightman only because of certain equity powers exercised by the courts in that state, not competent to common law courts. I am unable to see anything in this suggestion of any importance to the case presented by the claimant. The proceedings before the Wayne circuit court were not according to the course of the common law, but were in pursuance of a statute conferring a special jurisdiction, without which the circuit court would have had no power to affect the title of the parties to the premises, or confer any right upon the railroad company. Before this can be done the statute laws of 1871 (page 339) require notice to all "parties, so far as they can be ascertained, who own or have, or claim to own or have estate or interest in said property." It provides a mode to "ascertain and determine the damages or compensation which ought justly to be made by said company to the owners of or persons interested in each particular description of land." Laws 1871, p. 343. I think it not only an unnecessarily narrow view of the scope of this statute, but also essentially erroneous, to withhold from the jury the power to pass fully on the question of damages and compensation in which any party has an interest; and that it is a mere mockery to tell a landlord that he must take, as a part of his compensation for the loss of premises under a lease, the unsecured liability of the tenant to pay rent for the period the lease may have to run, whether it be five years or fifty; for the performance of which the lease while in force was ample security; but, in the subject of which, in the now changed circumstances, the tenant has no enjoyment, nor any duty except the continued payment of rent for the remainder of the term. Such a view of "compensation" I am persuaded is not what the statute contemplated. If the power of the jury over the whole subject of compensation was as ample as by the views above presented it appears to me to have been, then the compensation as fixed by them to be allowed to all the parties before them, of whom the claimant was one, has concluded all such parties; and if the claimant has suffered by an erroneous ruling of the circuit judge, he is remediless, except as the statute under which the action was had, may afford him an opportunity to have it reviewed. If this ruling had been

submitted to and affirmed by the supreme court of the state it might then become proper for this court to accept the law of the state as interpreted by its highest tribunal. In the absence of any such decision, the law, I think, must be interpreted as it applies to cases in this court, as the district judge shall determine, or the circuit judge, if a case shall be made calling for any such review.

These views lead me to the conclusion that no claim can be made on the lease of Hinchman, executor, etc., to Clancy, against the bankrupt's estate. I send herewith the proof of debt offered by the claimant and its accompanying schedules and depositions.

Pending the proceedings on the register's certificate before the district judge, the claimant was allowed to introduce additional evidence tending to show an actual agreement by him at the time he received the damages awarded in his favor, to continue to pay the rent during the unexpired portion of the term at the rate fixed by the lease.

LONGYEAR, District Judge. Without taking issue with the foregoing views of the learned register, on general principles, or, as applied to an ordinary case of a claim for rent, I think the peculiar circumstances of this case are such as, in equity at least, to entitle the claimant to the whole of his claim. By receiving from the railroad company the money allowed on account of rent to be paid in the future, and agreeing, in consideration thereof, to continue to pay rent the same as though his use and enjoyment of the premises had not been disturbed, Clancy must be held to have waived any and all legal objection he may have been entitled to make to the payment of rent on account of such disturbance; and the assignee occupies no better position than, but precisely the same as, Clancy in that respect. The claim in question must therefore be allowed as proven. Let it be so certified to the register.